# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **JAMES HAIDAK,** | \* |
| Plaintiff | \* |
| | \* |
| v. | \* |
| | \* |
| **UNIVERSITY OF MASSACHUSETTS** | \*    **CIVIL ACTION NO. 14-CV-30049-** |
| **AT AMHERST; ENKU GELAYE, DAVID** | \*    **MAP** |
| **C. VAILLANCOURT, ALLISON BERGER** | \* |
| **and PATRICIA CARDOSO** | \* |
| | \* |
| Defendants | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

*Introduction*

At the first hearing on this motion, defense counsel read from a letter informing the Defendants of the Plaintiff's strategic decision to limit his request for relief under Title IX to a claim of "selective enforcement." Because the University's October 2nd opposition made no mention of this correspondence, the Court may have inferred that the waiver of an "erroneous outcome" claim constituted a new development in the case that undermined the Plaintiff's right to the non-party student records he had moved to compel. In reality, the University's reliance on this evidence underscores the indefensible nature of its position opposing the production of these records.

Upon receiving the letter in question *on July 31, 2015*, defense counsel posed a number of questions concerning the implications of the Plaintiff's litigation strategy. *On August 6, 2015*, undersigned counsel furnished detailed answers in a letter subsequently

filed as an exhibit in support of the Plaintiff's motion to compel. (*See* Dkt. No. 79, Ryan Affidavit, Ex. 14, Letter from Luke Ryan to Jean Marie Kelley (Aug. 6, 2015).)

Over the course of the next three months, the Plaintiff's waiver of an "erroneous outcome" claim was a non-issue. Only when undersigned counsel requested a second Rule 37.1(a) conference to address missing written discovery responses did defense counsel elect to play offense by claiming the Plaintiff had failed to fulfill his discovery obligations.

This second Rule 37.1(a) conference took place on Friday, November 6, 2015, three days before the hearing on the Plaintiff's motion to compel. Although the waiver of an "erroneous outcome" claim was among the topics discussed, defense counsel never suggested that this might impact the discovery to which the Plaintiff is entitled.

When the hearing on November 9th began, undersigned counsel made it clear that the purpose of the Plaintiff's motion was not to unduly burden the Defendants but to obtain evidence capable of shedding light on the reason he was expelled for an "assault" that resulted in no medical treatment but which the Student Conduct Hearing Board apparently perceived as excessive force in self-defense. Although compelling evidence exists that a search for non-party student conduct records would not be nearly as onerous as the University claims,[1] the Plaintiff took his opponents' representations at face value and expressed a willingness to receive records only dating back to 2011 if that produced a

---

[1] As will be discussed, in 2011, one of the individual Defendants asked another University employee to compile the names, student identification numbers, incident dates, and incident numbers of all cases in the previous three years where students were charged with violating Code of Student Conduct provisions prohibiting assaultive behavior. It appears that this University employee was able to produce the requested information within hours.

sufficient sample size for a statistician to determine whether the sex(es) of the parties has a tendency to influence the resolution of assault charges at the University.

In a last-ditch effort to avoid an order for the production of these materials, defense counsel cited the contents – but not the date – of the July 31st letter.  In the pages that follow, undersigned counsel will demonstrate both the procedural and substantive flaws with the University's opposition.  Given these flaws and the importance of the underlying materials, this Court should allow the Plaintiff's motion.

***Additional Background***

Count I of the Second Amended Complaint alleges a deprivation of Due Process; Count II asserts a claim pursuant to Title IX.  (*See* Dkt. No. 68, 2nd Am. Compl..)  When this action commenced in March, 2014, the Plaintiff filed an Emergency Motion for Injunctive Relief.  (*See* Dkt. No. 2, Emergency Mot. for Injunctive Relief.)  In a memorandum of law filed in support of that motion, the Plaintiff noted that "[t]o date, neither the Supreme Court nor the First Circuit has articulated the proper framework for analyzing 'sex-based Title IX allegations' in the context of 'disciplinary proceedings.'"  (Dkt. No. 9, Mem. in Supp. of Emergency Mot. for Injunctive Relief 34 (citing *Bleiler v. Coll. of Holy Cross*, No. 11-11541-DJC, 2013 WL 4714340, at \*5 (D. Mass. Aug. 26, 2013)).)  The Plaintiff therefore proposed that this Court follow the example of Judge Casper, who had recently adopted the Second Circuit's approach to evaluating these kinds of Title IX claims "under an 'erroneous outcome' or 'selective enforcement' standard."  (*Id.* (citations omitted).)  "In this case," Mr. Haidak clarified that he had "plead in the alternative that [he is] in both categories."  (*Id.* (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).)

On or about April 14, 2015, the Defendants propounded written discovery requests. (Allen Aff. ¶ 7 (citations omitted).)  Among other things, the Defendants made the following requests for documentation:

- "Copies of all texts made or received on any phone utilized by the Plaintiff during the period January 1, 2012 to the present."

- "Copies of all documentation, including correspondence, evidencing or relating to posts relating to Lauren Gibney or to the charges asserted against you by Lauren Gibney, at any time from January 1, 2012 to the present . . . ."

- Copies of all documentation including correspondence evidencing or relating to all emails known to you that relate to, reference or are relevant to the subject matter of the charges asserted against you by Lauren Gibney and which are involved in the current litigation, at any time from January 1, 2012 to the present . . . ."

- Copies of all documentation, including correspondence, evidencing or relating to all emails known to you that were sent by and between you and Lauren Gibney, at any time from January 1, 2012 to the present . . . ."

(*Id.* ¶ 8 (citations omitted).)

Upon receiving the Defendants' written discovery requests, undersigned counsel commenced a search for documentation that would be responsive to them.  (*Id.* ¶ 9.)  This proved to be an extremely expensive and time-consuming undertaking due, in large part, to: (i) the extraordinary volume of material sought by the Defendants; (ii) the private nature of much of the material sought by the Defendants; and (iii) the fact that Mr. Haidak ceased residing in the United States shortly after his expulsion from the University of Massachusetts.  (*Id.* ¶ 10.)  When it became clear that the Plaintiff could not respond within the thirty days allowed by the Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2)(A), undersigned counsel sought and obtained defense counsel's assent to extending the time for

the Plaintiff's responses to the Defendants' written discovery requests. (*Id.* ¶ 11 (citing Fed. R. Civ. P. 29(b)).)

In the course of amassing documentation responsive to the Defendants' requests, undersigned counsel made the strategic decision to forgo an "erroneous outcome" claim and focus on the "selective enforcement" of Mr. Haidak as the basis for our request for relief under Title IX. (*Id.* ¶ 12.) On July 31, 2015, one of the undersigned attorneys sent defense counsel a cover letter with the Plaintiff's response to the Defendants' requests for the production of documents. (*Id.* ¶ 13 (citation omitted).) Among other things, this letter stated:

> Please be advised that the Plaintiff hereby waives any claim under Count Two of the Second Amended Complaint that the defendant University is liable for the "erroneous outcome" of the disciplinary proceeding that resulted in his expulsion. See Yusuf v. Vassar Coll., 35 F.3d 709, 715-16 (2d Cir. 1994). Going forward, the Plaintiff's Title IX claim will be limited to his assertion of "selective enforcement." See id.

> As a result of the Plaintiff's decision to proceed in this fashion, a substantial amount of documentation that is responsive to the defendants' requests is no longer relevant and has been redacted. Included with this letter are the redacted exhibits and a log documenting the redactions. Should you have any questions regarding this production, please do not hesitate to call Attorney Ryan or myself.

(*Id.* ¶ 14 (citation omitted).)

On August 4, 2015, defense counsel sent an e-mail with the subject heading: "'Waiver' under Count II." (*Id.* ¶ 15 (citation omitted).) In this e-mail, defense counsel stated:

> Hi Luke and Bonnie—

> I received your document response and cover letter yesterday; but I don't understand what you mean by "waiving" any claim under Count II that the university is liable for the "erroneous outcome" of the disciplinary proceeding; and how that waiver, even if effected, would act to make certain of the requested documents "no longer relevant."

First, is it your intent to amend the 2d Amended Complaint; and, if so, what will the amendment look like?  Further, to the extent that it appears that you still intend to argue that the penalty was improperly imposed, we believe that all of the evidence regarding Plaintiff's conduct would be relevant on that point; and it is not clear what evidence or requested materials you would deem "no longer relevant."

Further, you allege in Count I, Para. 216:

216. Defendants violated Plaintiff's clearly established rights secured by the Fourteenth Amendment, including but not limited to the right to procedural due process, by suspending Plaintiff without providing him a hearing or establishing that he constituted an " imminent threat" that would warrant such an interim restriction, by unreasonably delaying his disciplinary Hearing Board, and by subsequently expelling Plaintiff after a hearing at which he was denied his constitutional rights to notice of the allegations against him, to present evidence on his own behalf, and to contest the evidence against him.

In light of these allegations, is it also your intent to amend the 2d Amended Complaint with regard to Count I; and, if so, what will the amendment look like?  Further, it appears that Count I also brings into play the Hearing Board and the evidence regarding Plaintiff's conduct in this matter; and, again, therefore, it is not clear what evidence or requested materials you would deem "no longer relevant" with regard to Count I.

Could you please let me know your intentions in this regard?

Thanks—

Jean

(*Id.* ¶ 16 (citation omitted).)

Two days later, one of the undersigned attorneys sent defense counsel an e-mail with an attached letter. (*See* Dkt. No. 79, Ryan Affidavit in Support of Mot. to Compel, Ex. 13, E-mail from Luke Ryan to Jean Marie Kelley (Aug. 6, 2015; 12:52 pm); Dkt. No. 79, Ryan Affidavit in Support of Mot. to Compel, Ex. 14, Letter from Luke Ryan to Jean Marie Kelley (Aug. 6, 2015).) The outset of this August 6th letter requested a Rule 37.1(a) telephone conference and outlined certain "areas of (potential) disagreement" pertaining to

the Defendants' responses to written discovery propounded by the Plaintiff. (*See* Letter
from Luke Ryan to Jean Marie Kelley pp. 1-6 (Aug. 6, 2015).) The conclusion of this letter
offered the following response to defense counsel's August 4th email:

> Turning to your email dated August 4, 2015, let me begin by stating that we
> do not intend to file a motion to amend the Second Amended Complaint. In
> our view, Rule 15 would only be an appropriate mechanism for voluntarily
> dismissing an entire count. As noted above, Mr. Haidak continues to
> maintain that the University is liable for damages he suffered as a result of its
> violation of Title IX on a theory of "selective enforcement."

> At the Rule 56 stage, should you seek summary judgment on so much of
> Count Two as alleges an "erroneous outcome," we will not oppose this
> request. Alternatively, if Count II survives summary judgment, we will
> disclose our waiver in the final pretrial conference report we file with the
> Court and will make sure that the jury does not receive instructions that
> could lead to an award of damages under the "erroneous outcome" standard.

> With respect to paragraph 216, we continue to stand by these assertions and
> fail to see how waiving a claim requiring proof that the Hearing Board
> reached an erroneous outcome has any bearing on a separate claim requiring
> proof that the University failed to afford our client the procedural protections
> to which he was entitled.

> Lest there be any confusion, our waiver does not signify an acknowledgment
> that the Hearing Board reached the appropriate conclusion in finding Mr.
> Haidak responsible for assaulting Ms. Gibney. Rather, it constitutes a
> tactical decision to forgo any claim requiring the plaintiff to prove, by a
> preponderance of evidence, that this finding was incorrect.

> During the course of responding to the defendants' discovery requests, it
> became clear that the "erroneous outcome" claim was unlike the "selective
> enforcement" claim in terms of the body of information in our client's
> possession that might "appear[] reasonably calculated to lead to the
> discovery of admissible evidence." Fed. R. Civ. R. 26(b)(1). In our view,
> contesting the "responsible" finding on the assault charge could give rise to
> colorable defense claims regarding the discoverability of certain highly
> personal communications between our client and his friends insofar as they
> contain comments about Ms. Gibney and/or her relationship with Mr.
> Haidak.

> Conversely, claiming that his sex influenced the penalty he received
> produces no obligation on the part of Mr. Haidak to divulge highly personal
> information concerning his ex-girlfriend. Simply put, the University cannot

justify our client's expulsion based on any evidence that was unknown to University officials at the time this punishment was imposed.

As for Count One, we acknowledge that our challenge to the propriety of the process that preceded the expulsion requires the disclosure of all communications related to the 2013 disciplinary proceedings. Over the course of the last several months, Mr. Haidak, with the assistance of counsel, has engaged in a costly, painstaking review of thousands of electronic messages in search of such evidence.

The plaintiff has now disclosed all the evidence he could locate relevant to this claim or the defense to it. Other evidence responsive to defense requests has been redacted due to the fact that it is no longer "relevant to the issues in the case." *Spano v. Boeing*, No. 3:06-cv-00743-DRH-DGW, 2008 U.S. Dist. LEXIS 31306, at *7 (S.D. Ill. Apr. 16, 2008) (crediting a party's production of documents with redacted irrelevant information rather than withholding the documents altogether where the redacted information was "not relevant to the issues in this case and not reasonably calculated to lead to the discovery of admissible evidence"); *Beauchem v. Rockford Products Corp.*, No. 01 C50134, 2002 U.S. Dist. LEXIS 14879, at *6 (N.D. Ill. Aug. 13, 2002) (finding redaction of information irrelevant to the case as appropriate under Rule 26).

(*Id.* at 6-7.)

Upon receiving this explanation, none of the Defendants who had previously filed Answers to the Plaintiff's interrogatories amended or supplemented said Answers by lodging objections based on the Plaintiff's waiver of an "erroneous outcome" claim. (Allen Aff. ¶ 20.) On the afternoon of August 13, 2015, counsel for the parties participated in a Rule 37.1(a) conference. (*Id.* ¶ 21.) At no point during that conference did defense counsel object to providing student conduct records of non-party students on the basis of the Plaintiff's waiver of an "erroneous outcome" claim. (*Id.* ¶ 22.)

On September 18, 2015, the Plaintiff moved to compel the production of student conduct records for non-party students and filed a memorandum of law and affidavit in support thereof. (*See* Dkt. Nos. 77-79.) Pursuant to the Local Rules, the memorandum stated "[e]ach interrogatory" and "request for production . . . raising an issue to be decided

by the court, and the response thereto." Local Rule 37.1(b)(4). This pleading did not

reference any waiver-based objection because no such objection had been lodged. (Allen

Aff. ¶ 25.)

On October 2, 2015, the Defendant University filed its opposition to the Plaintiff's

Motion. (*See* Dkt. No. 80, Def.'s Opp'n to Pl.'s Motion to Compel.) The University did not

cite the Plaintiff's waiver of an "erroneous outcome" as a ground for objecting to the

production of non-party records or otherwise refer to this waiver in any way. (*See id.*)

In its opposition, the University took the position that responding to the Plaintiff's

request for non-party records "would impose an enormous burden upon the university." (*Id.*

at 10.) Among other things, the University stated that "the Amherst campus receives 2,000-

3,000 conduct matters per year" and "only began keeping a comprehensive electronic

tracking system, with refined search capacity, around 2011." (*Id.*) According to the

University, "a search as envisioned by the request here at issue would probably take the

efforts of 2 persons from the Dean's Office over a period of a month or more." (*Id.* (citation

omitted).)

This assertion appears inconsistent with an August 31, 2011, e-mail exchange

regarding "stats" between Defendant Allison Berger and Mary LeMoine (LeMoine), an

Applications Analyst at the Defendant University. (Allen Aff. ¶ 31 (citation omitted).) As

this correspondence makes clear, Defendant Berger asked LeMoine to compile the names,

student identification numbers, incident dates and incident numbers from "2008-present"

regarding certain alleged violations of the Code of Student Conduct (CSC). (*Id.* ¶ 32.)

The provisions of the CSC for which Defendant Berger requested this information

were Sections II B 1 A, II B 1 B, and II B 3. (*Id.* ¶ 33.) Section II B 1 A was entitled

"Harassment Physical Assault" in an earlier version of the CSC. (*Id.* ¶ 34.)[2] It appears that

within hours of the request Defendant Berger made on August 31, 2011, LeMoine was able

to produce a spreadsheet identifying 321 alleged violations of the three provisions of the

CSC set forth above. (*Id.* ¶ 36 (citations omitted).)

On October 20, 2015, one of the undersigned attorneys spoke with defense counsel

on the telephone. (*Id.* ¶ 37.)  At no point during this conversation did defense counsel cite

the Plaintiff's waiver of an "erroneous outcome" as a ground for objecting to the production

of non-party records or otherwise refer to this waiver in any way. (*Id.* ¶ 38.)

As of the morning of November 4, 2015, one of the individual Defendants had not

furnished answers to the Plaintiff's interrogatories and none of the Defendants had

responded to the Plaintiff's specific requests for the production of documents. (*Id.* ¶ 39.)

With the fact discovery deadline twenty-six days away, one of the undersigned attorneys

sent defense counsel the following e-mail:

> Dear Jean,
>
> I was hoping you might be able to provide us with an update on the
> following discovery issues in advance of tomorrow's hearing.
>
> First, we are still waiting for interrogatory answers from Allison Berger.
> Our understanding was that you intended to begin working with her in late
> September.  Could you tell us if she has begun participating in the litigation
> and when you expect to produce her answers?
>
> Second, we are still waiting for responses to our document requests from all
> of the defendants.  In the email below, you indicated that you anticipated
> providing them to us no later than the last week of August.  Can you tell us
> what your new timetable is with respect to this discovery?
>
> With respect to these first two issues, it may well be that you intend to lodge
> objections to some of the documentation/information we seek and/or inform

---

[2] Following an incident that took place on or about February 7, 2010, Mr. Haidak was
charged with violating this provision. (Allen Aff. ¶ 35 (citation omitted).)

us that some of it does not exist. However, unless and until we receive your responses, we cannot evaluate them and decide whether items you have chosen to withhold are important enough for us to ask the Court to order their production. While we could file motions to compel based on the lack of any responses, we are disinclined to do so for three reasons: (1) it appears the delay is largely attributable to forces beyond your control – i.e. [redacted] health and/or the new software the University has chosen to begin using in this case; (2) these types of motions are disfavored by Courts; and (3) engaging in this motion practice would be inconsistent with the cooperative approach we have taken to this litigation, in general, and to the discovery process, in particular. Notwithstanding our aversion to proceeding in this fashion, the interests of our client require us to obtain responses to the written discovery we served over six months ago. If you are not in a position to respond to our Rule 33 and 34 requests in the next week, we would ask you to file a motion to modify the scheduling order and explain to the Court why you need additional time to do so.

Third, following our Rule 37.1 conference in August, I left with the impression that you understood our concerns about the under-inclusiveness of the search term "Haidak" that you used in the process of producing work emails of the individual defendants. We subsequently proposed additional search terms. It is my understanding that you recently voiced some general objections to Bonnie about this list. Given the importance of this evidence and the strong possibility that the use of search terms will not lead to the production of all relevant ESI, we believe a manual search of the four individual defendants' emails from 4/15/13 to 12/22/13 would not be overly burdensome or unwarranted. That said, we do not object to your use of search terms and would simply ask you to identify the specific terms we have proposed that you do not wish to utilize. It is possible that we will not object to removing them from the list. Alternatively, we may have an explanation for their inclusion that will persuade you as to why it is proper to include them. Either way, it would be good to make some progress on this front as soon as possible.

Fourth, the emails you have produced so far contain a number of redactions that appear to go beyond references to the Gibneys and/or Lauren's roommate. Would you please provide a redaction log indicating the subject matter of each item that has been redacted and the justification for the redaction?

Finally, as you know, the deadline for fact depositions is at the end of this month. Putting aside the other student conduct cases that are the subject of tomorrow's hearing, we believe that the volume of outstanding discovery would make conducting depositions at this point highly impractical. However, given the possibility that the Court will not permit another modification to the scheduling order, we feel as though we have little choice

but serve notice of the depositions we will eventually need to take. We
understand that you have a trial coming up and may well have Thanksgiving
plans that would make your attendance at depositions between 11/19 and
11/30 impossible. We apologize in advance for any inconvenience this may
cause and will work with you to the extent possible to mitigate any personal
or professional hardships these notices may pose.

I appreciate your attention to these matters and look forward to your
response.

Sincerely,

Luke

(Allen Aff. ¶ 40 (citation omitted).)

The following day, defense counsel sent one e-mail explaining the nature of
redactions she had made, a second e-mail regarding her (un)willingness to accept service of
certain deposition notices, and a third e-mail containing deposition notices for the Plaintiff
and his parents. (*Id.* ¶ 41 (citations omitted).) None of these e-mails responded to the
inquiries posed regarding the outstanding discovery. (*Id.* ¶ 42.) One of the undersigned
attorneys therefore sent defense counsel an e-mail requesting another Rule 37.1(a) telephone
conference to discuss the outstanding discovery identified in the e-mail the day before. (*Id.*
¶ 43.) On November 6, 2015, exactly three months after receiving a letter explaining the
Plaintiff's rationale for waiving the "erroneous outcome" claim and redacting electronic
communications responsive to the Defendants' requests, defense counsel asked that the Rule
37.1(a) telephone conference include a discussion about undersigned counsel's "waiver
argument under which you refused to provide what appears to be a lot of documentation."
(*Id.* ¶ 44 (citation omitted).)

Later that same day, Defendants David Vallaincourt and Allison Berger responded
to the Plaintiff's requests for the production of documents and Defendant Berger provided

answers to the Plaintiff's interrogatories. (*Id.* ¶ 45 (citations omitted).)  Neither Defendant

Vaillancourt nor Defendant Berger cited the Plaintiff's waiver of an "erroneous outcome" as

a ground for objecting to any of his Rule 33 or Rule 34 requests. (*Id.* ¶ 46.)

At 2:00 pm on November 6, 2015, a Rule 37.1(a) telephone conference took place,

which lasted approximately twenty-five minutes. (*Id.* ¶ 47.)  During that conversation,

defense counsel indicated that she expected to produce Rule 34 responses from the

Defendant University and Defendants Enku Gelaye and Patricia Cardoso by the beginning

of the week of November 9, 2015. (*Id.* ¶ 48.) With respect to the Plaintiff's waiver of an

"erroneous outcome" claim, defense counsel expressed her view that this did not justify any

redactions and communicated her intention to move to compel the production of unredacted

copies of these documents. (*Id.* ¶ 49.)  Defense counsel did not take the position that the

waiver of an "erroneous outcome" claim – and redaction of responsive documents – had any

bearing on the Plaintiff's motion to compel the production of non-party student records

scheduled to be heard three days later. (*Id.* ¶ 50.)[3]  The first time defense counsel articulated

such a position was at the motion hearing on November 9, 2015. (*Id.* ¶ 53.)[4]

---

[3] Following this conversation, defense counsel sent an e-mail to undersigned counsel
memorializing her understanding of what took place during our Rule 37.1(a) telephone
conversation. (*See* Allen Aff. ¶ 51 (citation omitted).)  As can be seen, defense counsel did
not take the position that our waiver of an "erroneous outcome" claim – and redaction of
responsive documents – had any bearing on the Plaintiff's motion to compel the production
of non-party student records. (*Id.* ¶ 52.)

[4] As of the day of this filing, three Defendants have yet to respond to the Plaintiff's Rule 34
requests and none of the defense responses to written discovery propounded by the Plaintiff
have been amended to cite the Plaintiff's waiver of an "erroneous outcome" as a ground for
objecting to the production of requested material. (Allen Aff. ¶ 54.)

*Argument*

A.   *The University's Oral Objection to the Discovery Request at Issue Should be Deemed Waived.*

Local Rules 33.1 and 34.1 place identical obligations on parties lodging objections to interrogatories and document requests. Each rule contains a provision which states: "When an objection is made . . . it shall state with specificity all grounds upon which the objecting party relies. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived." Local Rule 33.1(c)(1); Local Rule 34.1(c)(1).[5]

If a party seeking discovery believes an objection is unwarranted, he or she must "arrange for [a] conference" with the objecting party in an effort to "narrow the areas of disagreement to the greatest possible extent." Local Rule 37.1(a). Only "if disputed issues are not resolved at the discovery conference" may "a dissatisfied party . . . file a motion and supporting memorandum." Local Rule 37.1(b). Among other things, such a memorandum must state "with particularity" each written discovery request "raising an issue to be decided by the court, and the response thereto," as well as a "statement of the moving party's position as to each contested issue, with supporting legal authority." Local Rule 37.1(b)(4), (5). Any response by the objecting party must "conform to the requirements of subdivision

---

[5] In 1993, Federal Rule 33 was amended to include a provision stating: "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). According to the Committee Notes, this paragraph was "added to make clear that objections must be specifically justified, and that unstated or untimely grounds for objection ordinarily are waived." Fed. R. Civ. P. 33, Committee Notes. Earlier this year, Federal Rule 34 was "amended to require that objections to Rule 34 requests be stated with specificity." Fed. R. Civ. P. 34, Committee Notes. "This provision adopts the language of Rule 33(b)(4), eliminating any doubt that less specific objections might be suitable under Rule 34." *Id.*

(b)(5) of this Rule" by setting forth the objecting party's position as to each contested issue, with supporting legal authority.  Local Rule 37.1(c).

The purpose of these rules is to prevent what occurred on November 9, 2015. Undersigned counsel and the Court prepared for the hearing that day by devoting resources to reviewing the pleadings and researching the relevant legal authorities.  When defense counsel orally lodged a previously unstated ground for its objection, the Court had little choice but to suspend the proceeding to learn more about the Plaintiff's waiver of an "erroneous outcome" claim.

As the Allen Affidavit makes clear, this was hardly a last-second development.  The Plaintiff waived this claim in a letter dated July 31, 2015.  Four days later, defense counsel acknowledged her receipt of this correspondence and inquired as to the ramifications of this decision.  In a letter dated August 6, 2015, undersigned counsel answered these questions by disclosing the Plaintiff's litigation strategy.  Counsel for the parties subsequently communicated via e-mail and telephone on multiple occasions and defense counsel never once raised the possibility that the waiver of an erroneous outcome claim might constitute an additional ground upon which to object to the Plaintiff's request for non-party student records.

In short, this is not a case where a party's failure to articulate a timely objection can be excused for good cause.  While this Court may be appropriately reluctant to deem an objection waived, a ruling on the merits here would effectively reward the University for making its position a moving target.

B.    *The Plaintiff's Waiver of an Erroneous Outcome Claim Does Not Make the*
      *Discovery at Issue any Less Relevant to his Selective Enforcement Claim.*

At the outset of this litigation, Defendant Gelaye filed an affidavit recounting a

telephone conversation she had with Plaintiff after he had been suspended from the

University as an "interim restriction." (*See* Dkt. No. 16, Ex. 1, Eknu Gelaye Aff.)  In that

affidavit, Defendant Gelaye recalled telling Mr. Haidak that "physical assault was a serious

matter, intolerable in an educational community; and if he were found responsible,

suspension or expulsion was a probable outcome." (*Id.* ¶ 5.)

The student conduct files of non-party students in the University's possession can

shed light on the veracity of this statement.  If lesser sanctions tended to be imposed when

the perpetrators of assaults were females and/or the victims were males, these files would

also provide substantial assistance to the Plaintiff in establishing his "selective enforcement"

claim. (*See* Dkt. No. 78, Pl.'s Mem. in Supp. Mot. to Compel 10 (citing *Yusuf v. Vassar*

*Coll.*, 35 F.3d 709, 715 (2d Cir. 1994), for the proposition that "selective enforcement"

requires proof that "the severity of the penalty and/or the decision to initiate the proceeding

was affected by the student's gender").)[6]

Because the Defendants have yet to file a supplemental opposition or lodge a

waiver-related objection in any of their discovery responses, the Plaintiff can only speculate

as to the consequences they ascribe to his decision to forgo an erroneous outcome claim.

Nevertheless, there is no question that the contents of the student conduct files of non-party

students have a critical role to play in resolving the Title IX claim the Plaintiff has chosen to

pursue under Count II of the Second Amended Complaint.

---

[6] It should be noted that this pleading did not set forth the elements of an "erroneous
outcome" claim, given the fact that the Plaintiff had waived this claim some seven weeks
before.

C.     *Responding to the Plaintiff's Request Would Impose a Minimal Burden on the University.*

As noted above, the University maintains that it "only began keeping a comprehensive electronic tracking system, with refined search capacity, around 2011," and therefore responding to the Plaintiff's request "would probably take the efforts of 2 persons from the Dean's Office over a period of a month or more." (Def.'s Opp'n to Pl.'s Motion to Compel at 10.)[7] While "[a] party claiming undue burden or expense ordinarily has far better information — perhaps the only information — with respect to that part of the [proportionality] determination," Fed. R. Civ. P. 26, Committee Notes on Rules – 2015 Amendment, this is not case where the plaintiff (and court) must rely exclusively upon defense representations. Here, it would appear to be undisputed that it only took a single Applications Analyst a couple of hours on August 31, 2011, to produce a list of all assault cases dating back to 2008.

Notwithstanding the existence of such evidence, the Plaintiff would reiterate his desire for nothing more (or less) than a sufficient sample size of non-party assault cases in order to determine whether there is a significant, sex-based disparity in the administration of the CSC at the University.

**Conclusion**

Based on the foregoing reasons and those set forth in his previously filed pleadings, the Plaintiff respectfully requests that this Honorable Court allow his Motion to Compel.

---

[7] Assuming *arguendo* that this estimate is accurate, it would appear that it is the University's "own record keeping policies which have contributed significantly to the burden imposed on it." *Briddell v. St. Gobain Abrasives, Inc.*, No. 04-cv-40146-FDS, at *9 (Nov. 10, 2005). As then-Chief Magistrate Judge Swartwood observed, "Courts have been loathe to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery." *Id.* (citations omitted).

THE PLAINTIFF


By: ____/s/ Luke Ryan_____
His Attorney
LUKE RYAN, BBO# 664999
SASSON, TURNBULL, RYAN & HOOSE
100 Main Street, 3rd Floor
Northampton, MA 01060
(413) 586-4800
(413) 582-6419 [FAX]
lryan@strhlaw.com


_____/s/ Bonnie G. Allen____
His Attorney
BONNIE G. ALLEN, BBO #563995
39 Main Street, Suite 8
Northampton, MA  01060
(413) 584-3515
(413) 586-7076 [FAX]
bga@allenlawoffice.net


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing, filed through the Electronic Case Filing

System, will be sent electronically to the registered participants as identified on the

Notice of Electronic Filing on November 17, 2015.


 /s/ Luke Ryan
Luke Ryan


18