UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES HAIDAK,<br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MASSACHUSETTS<br>AT AMHERST; ENKU GELAYE, DAVID C.<br>VAILLANCOURT, and ALLISON BERGER,<br>    Defendants | CIVIL ACTION NO. 14CV30049 |

**DEFENDANTS' RESPONSE TO MOTION TO COMPEL
ADDITIONAL ASSAULT DATA**

Now come the Defendants University of Massachusetts, Enku Gelaye, David C. Vaillancourt, and Allison Berger, ("Defendants") and hereby respond to Plaintiff's Motion to Compel Additional Assault Data as follows.

**Plaintiff's Prior Motion To Compel**

On September 18. 2015, Plaintiff had filed a Motion to Compel, seeking an order that the Defendants produce, "unredacted copies of Student Conduct files related to complaints made against non-party University students for alleged assaults from Sept. 1, 2004 to January 1, 2014." Defendants had opposed the motion, arguing, *inter alia*, that the order sought by Plaintiff would require the university to open to the Plaintiff private and sensitive disciplinary files concerning students not related in any way to the current litigation. Courts have recognized that such files constitute "education records" as defined by the Family Educational Rights and Privacy Act ("FERPA"). United States v. Miami Univ., 91 F. Supp. 2d 1132, 1149 (S.D. Ohio 2000) aff'd, 294 F.3d 797 (6th Cir. 2002). While FERPA does not create an absolute privilege barring the production of student discipline records such as the ones requested by Plaintiff, it was

the position of the Defendants that Plaintiff had not adequately addressed the significant privacy interests of the nonparty students, nor had he met the "significantly heavier burden" placed on him under FERPA to establish a need for these records that outweighed the privacy interests of the third party students.  (See Alig-Mielcarek v. Jackson, 286 F.R.D. 521, 526 (N.D. Ga. 2012): "[W]hen addressing objections to the disclosure of educational records, courts have permitted discovery only when the party requesting the records has met a 'significantly heavier burden' to show that its interests in obtaining the records outweighs the significant privacy interest of the students.").

In addition, the Defendants advised the court that the request would impose an enormous burden upon the university.  Currently, the Amherst campus receives 2,000-3,000 conduct matters per year.  Several years ago those numbers were significantly higher; and may have been approximately 4,000-5,000 in the 2004 time period.  Further, the Amherst campus only began keeping a comprehensive electronic tracking system, with refined search capacity, on or around 2011.[1]  Because definitions of terms such as "assault" have changed over time, any search for such records would entail going through all of the files to determine whether they came within the scope of the request.  It was the university's belief, supported by the affidavit of Vice-Chancellor Enku Gelaye, that a search as envisioned by the request here at issue would probably take the efforts of 2 persons from the Dean's Office over a period of a month or more.

Finally, Defendants argued that the request covering all Student Conduct files related to complaints made against non-party University students for alleged assaults over a 10-year period was spectacularly overbroad and not reasonably calculated to lead to the discovery of admissible

---

[1] Prior to that time the campus maintains paper files.  There is a policy of keeping such files only for a period of 7 years after the date of an incident.

evidence, especially where Plaintiff had not come forward with any facts showing that the gender of the parties was a factor in the case at hand.

It was in this context that the parties were heard on November 23, 2015 with regard to Plaintiff's Motion to Compel. It appeared at that time that the court was attempting to weigh both the Plaintiff's asserted need for information about assaults on campus with the difficulty of obtaining the information and the sensitive nature of the information. In weighing those counterbalances, the court entered an order that limited assault data to those cases which could be recovered through the campus electronic tracking system, with refined search capacity, which had only been in use since 2011. This was incorporated into the court's order dated November 23, 2015:

> **For the reasons stated in court this day, the defendants will produce to plaintiff, by December 16, 2016, data concerning charges of physically assaultive conduct by students at the University of Massachusetts from July 1, 2011 through October 31, 2015. The data will show the gender of the charged student; the gender of the charging student; the conduct charged (some definition of physical assault); whether the charged student was found responsible or not responsible; and the sanction imposed if the student was found responsible. The date produced will not include identifying information as to the charged and charging students. Plaintiff is not precluded from seeking further information concerning the incidents identified by the University in its production should it be necessary to do so to defend any statistical analysis of the data produced. (Robertson, Katherine)**

In making its order, the court also specifically left open the possibility that the parties might return to court in the event that circumstances might require the production of additional data.

## ARGUMENT

### I. BURDEN OF PRODUCING SUCH ADDITIONAL DATA

Plaintiff now seeks an order for production of additional data concerning the adjudication of assault charges from July 1, 2010 to June 30, 2011. As noted above, this will require going through a large number of paper files, since the requested data relates to a period before the university's electronic system was established. In addition, Defendants have already produced data relating to cases arising over more than 4 years; and that data is closer in time to the incident at issue, which occurred in April, 2013. The newly requested data goes back to a more distant period of time, even less likely to demonstrate any similarly situated students. It is noteworthy that even after reviewing the 4-plus years of assault data during the most relevant time period, Plaintiff's expert seeks to reach "a more definitive inference" of gender-based disparities. Defendants submit that the data already produced represents a reasonable balancing of Plaintiff's asserted need for information about assaults on campus with the difficulty of obtaining the information and the sensitive nature of the information. To require additional data, especially where it will be so difficult to procure, does further damage to that balance.

### II. CHALLENGE TO PROBATIVE VALUE OF STATISTICAL ANALYSIS

Indeed, Defendants submit that they are entitled to challenge any statistical analysis offered by Plaintiff in this case; and especially where it appears that the opinion being proffered by Plaintiff's expert may not meet the threshold for a proper expert opinion. In order to do this, they will have to have members of the Dean's office go through paper files over the Thanksgiving holiday. It would be virtually impossible for them to also undertake a new review of paper files never before reviewed.

Statistical evidence showing that one class of persons was disciplined differently than another cannot alone create an inference of discrimination. See Tasby v. Estes, 643 F.2d 1103, 1108 (5th Cir. Tex. 1981) ("statistical proof that black students are disciplined more frequently and more severely than white and Mexican-American students has limited probative value."); see also, Washington v. Davis, 426 U.S. 229 (1976) (concluding that statistical evidence showing that black students are disciplined more harshly or frequently than white students does not necessarily result in a verdict for the plaintiffs). Rather, "to succeed on an equal protection claim based on circumstantial evidence, a plaintiff must prove that a 'nearly identical' comparator received different treatment." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004). In the context of discriminatory student discipline, this means that a plaintiff needs "to show that similarly situated students were not expelled for the same conduct." Fuller v. Decatur Pub. Sch. Bd. of Educ., 78 F.Supp.2d 812, 815 (C.D. Ill. 2000). In Rollins v. Bd. of Trustees of the Univ. of Alabama, the plaintiff, who was ranked third to last in his class, asserted that he was denied equal protection when the university dismissed him instead of "Comparator Two," a white female who ranked second to last in the class. 647 F.App'x 924, 939 (11th Cir. 2016). The Eleventh Circuit looked at the history of both students and found that the two were not "nearly identical" because "Comparator Two had a better overall record." Rollins, 647 F. App'x at 939. Courts have found that comparators are not similarly-situated based on even fewer distinctions. See Watson v. Univ. of South Alabama College of Medicine, 463 F.Supp. 720, 722 (S.D. Ala. 1979) (holding that two students were not similarly-situated because the comparator had undergone therapy for a psychological condition during his first year of medical school). Thus, "statistics alone will normally not be sufficient" to prove unlawful discrimination, "especially when the case involves an individual, which is often true in situations in which disparate

treatment is alleged." See Hazelwood School District v. United States, 433 U.S. 299 (1977); see also Lawton v. State Mutual Life Assurance Co. of America, 924 F. Supp. 331, 341-344 (D. Mass. 1996), aff'd 101 F.3d 218 (1st Cir. 1996) (since focus of disparate treatment case is on how particular individual was treated, statistical evidence rarely suffices to rebut defendant's legitimate, nondiscriminatory rationale for dismissal of an individual).

While evidence of disparate treatment may provide an important starting point, the statistics offered have limited probative value because they do not reflect other relevant circumstances surrounding each individual case of punishment for these infractions. Tasby, 643 F.2d at 1107, n. 1. "Although in total context an inference of gender bias is certainly *conceivable or possible*, the question is whether the factual allegations make that inference cross the line from conceivable to *plausible*…And, in the absence of any specific factual allegations pointing to such a bias on the part of the defendants, it cannot be said that the discriminatory motive explanation is plausible rather than just conceivable." Doe v. Rector & Visitors of George Mason Univ., 132 F.Supp.3d 712, 733 (E.D. Va. 2015). Thus, the intent of the defendant is a substantial factor in cases such as these. The First Circuit has observed that "valid statistical evidence may play a helpful role in disparate treatment cases, but only if it tends to prove the discriminatory intent of the decision makers involved." Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 32 (1st Cir. 2003); Ray v. Ropes & Gray LLP, 799 F.3d 99, 116 (1st Cir. 2015). Thus, statistical evidence usually has little bearing on the defendant's specific intent in making a particular decision, and it is rarely enough to rebut a defendant's legitimate, nondiscriminatory reason for a specific action. Ropes & Gray, 799 F.3d at 116; Bloomfield v. Bernardi Automall Trust, 170 F.Supp.2d 36, 45 (D. Mass. 2001).

Accordingly, even if the statistical evidence shows substantial differences in the way that males are disciplined and the way that females have been disciplined, the court cannot tell, from this information alone, whether differences in treatment between men and women are based upon discriminatory intent. Too many legitimate, non-discriminatory factors are involved in the process of student discipline to permit an inference of discriminatory purpose from a showing of disproportionate treatment. For example, male and female students may not commit disciplinary infractions at the same rate or of the same seriousness, and this differential may be accounted for in non-discriminatory terms. In short, there are a number of possible explanations for any disparate treatment, of which gender-motivated bias is only one. Rector, 132 F.Supp.3d at 733.[2]

---

[2] Courts have also pointed to the unique nature of student discipline cases. "Student discipline is fundamentally unlike student assignment and transfer, faculty hiring and discharge, and the like. In those cases, decisions by school officials which bear more heavily on one [group] than another may reflect disparate treatment that cannot be explained on grounds other than race. In these cases, however, statistical evidence fails to account for the many variables at work in the process of disciplining school children." Tasby, 643 F.2d at 1107. "School administrators are properly concerned with balancing numerous competing considerations when deciding how to discipline a student, including the personal history and individual needs of a student, the flagrancy of the offense, and the effect that the misconduct may have on other students." Id. at 1108. Further, because educational institutions are especially knowledgeable about matters involving students and academic life, courts are generally reluctant to intervene in academic and disciplinary decisions made by colleges and universities. Schaer v. Brandeis University, 432 Mass. 474, 482 (2000).

## Conclusion

Wherefore, for the above-stated reasons, Defendants request that this court deny Plaintiff's Motion to Compel additional data concerning the adjudication of assault charges from July 1, 2010 to June 30, 2011.

Date:  November 7, 2016

Respectfully submitted,

DEFENDANTS,
By their attorneys,

/s/ *Jean Marie Kelley*
Jean Marie Kelley, Esq.,
BBO#: 265540
Senior Litigation Counsel
University of Massachusetts
333 South Street - 4th Floor
Shrewsbury, MA 01545
Tel.: 774-455-7303
Fax: 774-455-7310
jkelley@umassp.edu

## CERTIFICATE OF SERVICE

I, Jean Marie Kelley, counsel for the Defendants, hereby certify that this Response and Certificate of Service filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Jean Marie Kelley*
Jean Marie Kelley